[Cite as *State v. Matthews*, 2024-Ohio-1863.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240016 |
|  |  | TRIAL NO. B-2301853 |
| Plaintiff-Appellee, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
| GERMAN MATHEWS, | : |  |
| Defendant-Appellant. | : |  |

Criminal Appeal From:    Hamilton County Court of Common Pleas

Judgment Appealed From Is:    Affirmed in Part, Reversed in Part, and Cause Remanded in Part

Date of Judgment Entry on Appeal: May 15, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Norbert Wessels*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP*, and *Brian T. Goldberg*, for Defendant-Appellant.

**KINSLEY, Judge.**

**{¶1}** Defendant-appellant German Mathews appeals from the trial court's judgment convicting him of felonious assault, kidnapping, and rape. In four assignments of error, Mathews argues that his pleas were not entered knowingly, voluntarily, and intelligently; that the trial court erred in imposing consecutive sentences without making the required findings under R.C. 2929.14(C)(4); that his convictions for kidnapping and rape were subject to merger; and that the trial court failed to give the required notifications under the Reagan Tokes Law ("RTL").

**{¶2}** We hold that although the trial court failed to substantially comply with Crim.R. 11(C)(2) by not explicitly informing Mathews that he was subject to a mandatory prison term, the trial court's failure to do so did not prejudice Mathews. We further hold that the trial court was not required under Crim.R. 11 to inform Mathews of RTL notifications and his eligibility for judicial release or other earned credit at his plea colloquy. Therefore, we overrule Mathews's first assignment of error. We similarly overrule Mathews's third assignment of error, because we hold that his convictions for kidnapping and rape were not subject to merger.

**{¶3}** But we sustain Mathews's second assignment of error, because the trial court failed to make the required proportionality finding under R.C. 2929.14(C)(4), either at the sentencing hearing or in its sentencing entry. And we sustain Mathews's fourth assignment of error, because the trial court failed to provide Mathews with the required notifications under the RTL.

**{¶4}** Accordingly, we affirm the trial court's judgment in part, reverse it in part as to the trial court's imposition of consecutive sentences and with regard to the lack of RTL sentencing notifications, and remand this cause for resentencing.

2

*Factual and Procedural Background*

{¶5}    The charges against Mathews relate to the tragic attack against M.F., a developmentally disabled woman.  During the early morning hours of April 29, 2023, M.F. was on her morning walk to work when she encountered Mathews.  As Mathews began walking closer to M.F., she moved to the side so he could pass her, given that she walked slower due to her disability.  At that point, Mathews attacked M.F., dragged her to a nearby wooded area, took away her phone, and raped her.  A passerby witnessed this and alerted the police.  Mathews was found fleeing on foot with his hands still covered in M.F.'s blood.  M.F. suffered multiple fractures on her face, which indicated that she would have struggled to escape on her own.

{¶6}    Mathews was indicted for one count of felonious assault in violation of R.C. 2903.11(A)(1) with a sexual motivation specification, one count of kidnapping in violation of R.C. 2925.01(A)(4) with a sexual motivation specification, and two counts of rape in violation of R.C. 2907.02(A)(2).

{¶7}    At the October 17, 2023 plea hearing, the trial court was concerned that Mathews was not entering his pleas knowingly, voluntarily, and intelligently when Mathews asserted that he had not read his plea form.  Mathews's counsel maintained that the form was read to Mathews with an interpreter.  But because Mathews insisted that he did not read the form personally, the trial court continued the plea hearing.

{¶8}    On October 25, 2023, the trial court held another plea hearing.  At this hearing, Mathews confirmed he read the plea form himself.  Mathews pled guilty as charged.

{¶9}    The trial court sentenced Mathews on December 20, 2023.  At the sentencing hearing, the trial court determined pursuant to R.C. 2929.12(B)(1) and (2)

that Mathews's conduct was more serious than conduct normally constituting his offenses because the injuries suffered by the victim as a result of the offenses were exacerbated by her physical or mental condition and because the victim suffered serious physical and psychological harm. The court also considered a number of factors under R.C. 2929.12(D) weighing both for and against the likelihood that Mathews would commit future criminal offenses. These included the fact that Mathews has previously been charged with sex offenses, that he had a demonstrated pattern of alcohol abuse that precipitated the offenses in this case, that he had not responded favorably to previous efforts at rehabilitation, and that he accepted responsibility for the crimes against M.F. by pleading guilty.

{¶10} At the conclusion of the hearing, the trial court sentenced Mathews to a prison term of eight years on count one for felonious assault, 11 years on count two for kidnapping, 11 to 16.5 years on count three for rape, and 11 years on count four for rape. Counts two and four were ordered to be served concurrently with each other and concurrently with the sentences imposed on counts one and three. Counts one and three were ordered to be served consecutively to each other. Mathews was sentenced to a total prison term of 19 to 24.5 years and classified as a Tier III sex offender.

{¶11} Mathews now appeals.

### *Plea Colloquy*

{¶12} In his first assignment of error, Mathews argues that his pleas were not entered knowingly, voluntarily, and intelligently, because he was not advised that the rape charges carried a mandatory prison sentence, that all of the charges were subject to indeterminate sentences under the RTL, or that he was not eligible for judicial release or other earned credit.

4

{¶13} "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Brigner*, 4th Dist. Athens No. 14CA19, 2015-Ohio-2526, ¶ 8. In *State v. Foster*, we explained the trial court's obligations to a defendant in a plea colloquy under Crim.R. 11(C):

> The trial court must inform the defendant that by pleading guilty or no contest, he is waiving the following constitutional rights: the privilege against self-incrimination, the right to a jury trial, the right to confront his accusers, and the right of compulsory process of witnesses. The trial court must also inform the defendant of certain nonconstitutional rights, including the nature of the charges, the maximum penalty involved, the eligibility of the defendant for probation or community control, and the effect of the plea.

> A trial court must strictly comply with Crim.R. 11 when it explains the constitutional rights set forth in Crim.R. 11(C)(2)(c). When a trial court fails to explain these rights, the guilty or no-contest plea is invalid under a presumption that it was entered involuntarily and unknowingly.

> A trial court, however, need only substantially comply with Crim.R. 11 when explaining the nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b). Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. When a trial

court fails to comply with Crim.R. 11 with regard to a non-constitutional right, the plea may be vacated only if the defendant shows prejudice. The test for prejudice is whether the plea would have otherwise been made.

(Internal quotation marks and citations omitted.) *State v. Foster*, 2018-Ohio-4006, 121 N.E.3d 76, ¶ 14-16 (1st Dist.).

{**¶14**} Mathews challenges the trial court's alleged lack of explanation of what he concedes are nonconstitutional rights: the right to notice of a mandatory prison sentence, certain statutory explanations under the RTL and his eligibility for judicial release or other earned days of credit. We consider each in turn.

{**¶15**} If a defendant is convicted of charges that carry a mandatory prison sentence, "the court must, before accepting the plea, determine the defendant's understanding that the defendant is subject to a mandatory sentence and that the mandatory sentence renders the defendant ineligible for probation or community control sanctions." *State v. Morgan*, 2018-Ohio-319, 104 N.E.3d 941, ¶ 15 (2d Dist.). A trial court may meet this requirement by either expressly informing the defendant, or by confirming the defendant's subjective understanding, of the mandatory nature of the prison term from the totality of the circumstances. *State v. Wyatt*, 2017-Ohio-8391, 99 N.E.3d 938, ¶ 13 (8th Dist.).

{**¶16**} We affirmed the focus on the defendant's subjective understanding, given the entirety of the information being communicated regarding the available sentencing options, in *Foster*, 2018-Ohio-4006, 121 N.E.3d 76. There, the defendant's plea form did not indicate that the rape offense carried a mandatory prison term. *Id.* at ¶ 20. And at the defendant's sentencing hearing, he was incorrectly advised that the

rape offense did not carry a mandatory prison sentence. *Id*. at ¶ 21. But the trial court did expressly inform the defendant that community control was not a sentencing option and that it planned to impose a prison sentence on him. *Id*. Regardless, the trial court proceeded to read from the community control explanation in the plea form. *Id*. We held that despite the error in the plea form and the trial court's recitation of the community control portion of the plea form, the defendant could not demonstrate prejudice from the trial court's statements. *Id*. at ¶ 22. This was because the trial court repeatedly and expressly told the defendant during the plea colloquy that community control was not a sentencing option and that it intended to impose a prison term. *Id*.

{¶17} Conversely, in *Brigner*, the defendant's rape convictions carried a mandatory prison term, but he was affirmatively informed by the trial court that a prison sentence was only presumed and that the trial court could impose community control sanctions instead. *Brigner*, 4th Dist. Athens No. 14CA19, 2015-Ohio-2526, at ¶ 12, 14. This misrepresentation reinforced the parties' misunderstanding regarding the availability of community control for the defendant's rape convictions. *Id*. at ¶ 14. Relying on this misrepresentation, the defendant and his counsel requested community control in lieu of prison, even though Brigner's rape convictions carried a mandatory prison sentence. *Id*. Unlike *Foster*, these circumstances indicated that Brigner was prejudiced by the trial court's mistake in informing the parties that it could impose a community control sanction. *Id*. Because Brigner sought community control rather than prison at sentencing, it was questionable whether he would have made the plea without the trial court's statements regarding community control. *Id*.

{¶18} Here, Mathews's plea form incorrectly stated that his rape convictions did not carry a mandatory prison sentence. The trial court similarly failed to inform

Mathews of the mandatory nature of his prison sentences at his sentencing hearing. But neither the plea form nor the trial court at sentencing made any representations regarding Mathews's eligibility for community control or non-prison sanctions. Instead, the trial court informed Mathews that he "would at least, at a bare minimum, have to serve three to four and a half years" of incarceration. Mathews confirmed his understanding of this statement.

{¶19} By not informing Mathews that he was subject to a mandatory prison term which would make him ineligible for community control in lieu of prison time, the trial court failed to substantially comply with Crim.R. 11(C)(2)(a). But Mathews cannot demonstrate that he was prejudiced by this omission. Unlike in *Brigner*, the trial court never told Mathews that it was authorized to impose community control. But the trial court did inform Mathews that, at a bare minimum, he would be required to serve several years in prison. While it did not explicitly use the word "mandatory," this instruction by the trial court apprised Mathews that prison time, rather than community control, would be a part of his ultimate sentence. We therefore cannot say, on this record, that Mathews would not have pleaded guilty had he been correctly apprised of the requirement of mandatory prison time. Mathews's claim under Crim.R. 11(C)(2)(a) regarding the mandatory nature of his sentences therefore fails.

{¶20} We next consider Mathews's assertion that the trial court was obligated to explain certain RLT notifications and his eligibility for judicial release or other earned days of credit at his plea colloquy. A trial court must advise the offender of certain notifications under the RTL *at sentencing*. *State v. Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, ¶ 6. But, as the state notes, there is no obligation for the trial court to provide these notifications at the plea colloquy.

8

Likewise, Crim.R. 11 does not require a trial court to notify a defendant that he is ineligible for judicial release or that his sentence may or may not be reduced by the statutory provisions for earned days of credit. *Foster*, 2018-Ohio-4006, 121 N.E.3d 76, at ¶ 24, 26.

**{¶21}** We accordingly overrule Mathews's first assignment of error.

### *Consecutive Sentences*

**{¶22}** Next, Mathews argues the trial court erred in imposing consecutive sentences where it failed to make the appropriate findings under R.C. 2929.14(C)(4).

**{¶23}** In *State v. Bonnell*, the Ohio Supreme Court outlined appellate review of consecutive sentences:

> On appeals involving imposition of consecutive sentences, R.C. 2953.08(G)(2)(a) directs the appellate court to review the record, including the findings underlying the sentence and to modify or vacate the sentence if it clearly and convincingly finds that the record does not support the sentencing court's findings under division (C)(4) of section 2929.14 of the Revised Code. But that statute does not specify where the findings are to be made. Thus, the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(2) before it imposed consecutive sentences.

> When imposing consecutive sentences, a trial court must state the required findings as part of the sentencing hearing, and by doing so it affords notice to the offender and to defense counsel. And because a court speaks through its journal, the court should also incorporate its

statutory findings into the sentencing entry. However, a word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.

(Internal quotation marks and citations omitted.) *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 28-29.

**{¶24}** More recently, in *State v. Gwynne*, the Ohio Supreme Court held that "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5. But as the court in *State v. Sprague* noted, if a defendant argues that the trial court completely failed to make the required findings under R.C. 2929.14(C)(4), then *Bonnell* still applies. *State v. Sprague*, 6th Dist. Lucas No. L-23-1060, L-23-1061, and L-23-1062, 2023-Ohio-4343, ¶ 14-15. Because Mathews argues that the trial court failed to make these required findings, and not that the trial court's consecutive sentence findings were not supported by the record, we apply the holding and reasoning in *Bonnell* in considering Mathews's challenge to his consecutive sentences.

**{¶25}** R.C. 2929.14(C)(4) provides that a court may impose consecutive prison terms:

if the court finds that consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's

conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶26}** The trial court's entry sentencing Mathews to consecutive sentences as to counts one and three stated the following:

> The Court also finds that consecutive sentences are appropriate pursuant to 2929.14(C)(4) of the Ohio Revised Code in that the Court finds that these offenses were committed as part of one or more courses of conduct, and the harm caused was so great that a single prison term does not adequately reflect the seriousness of the offender's conduct.

* * *

11

The Court also finds the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crimes by the offender.

**{¶27}** Importantly, the trial court omitted from its sentencing entry the required finding that consecutive sentences were not disproportionate to the seriousness of Mathews's conduct and to the danger he posed to the public. It was similarly silent as to these findings at the sentencing hearing. While a word-for-word recitation of the language of the statute is not required, the trial court must still use the language from which a reviewing court can discern that it made *all* of the required findings under R.C. 2929.14(C)(4). And here, the trial court did not expressly reference or even allude to the proportionality finding under R.C. 2929.14(C)(4).

**{¶28}** In *State v. Hoy*, 10th Dist. Franklin Nos. 23AP-38, 23AP-40, 23AP-41, 23AP-42, 23AP-43, 23AP-44, 23AP-45, 23AP-46, and 23AP-47, 2024-Ohio-1555, ¶ 14, the court reversed the trial court's imposition of consecutive sentences where the trial court failed to use language of proportionality or seriousness and failed to engage in any analysis that suggested consideration of the defendant's conduct when it imposed consecutive sentences. There, the court reasoned that even the trial court's reference to the escalation in number and frequency of incidents by the defendant and his possession of a gun during the last incident was insufficient to constitute a proportionality review under R.C. 2929.14(C)(4). *Id.* at ¶ 19. And in *State v. Schaus*, 6th Dist. Lucas No. L-23-1146, 2024-Ohio-1515, ¶ 17, the court rejected the state's argument that the trial court's consideration of the seriousness and recidivism factors contained in R.C. 2929.12 also supported the required proportionality review, because

the court's findings under R.C. 2929.12 related only to individual sentences and the determination of whether the offender was more or less likely to commit future crimes.

{¶29} Similarly, here, we cannot discern that the trial court engaged in any proportionality analysis that suggested the trial court weighed the imposition of consecutive sentences against the seriousness of Mathews's conduct and the danger he posed to the public. *See Hoy* at ¶ 14. Further, we hold that the trial court's consideration of the sentencing factors under R.C. 2929.12 did not support the required proportionality review under R.C. 2929.14(C)(4). *See Schaus* at ¶ 17.

{¶30} Thus, because the trial court did not make a finding, either expressly or impliedly, under R.C. 2929.14(C)(4) that consecutive sentences were not disproportionate to Mathews's conduct and to the danger he posed to the public and incorporate that finding into its sentencing entry, we sustain Mathews's second assignment of error and reverse the trial court's imposition of consecutive sentences. We remand this cause for resentencing consistent with the requirements of R.C. 2929.14(C)(4).

### *Merger*

{¶31} In his third assignment of error, Mathews argues that the trial court erred by failing to merge the charges of kidnapping and rape when they were allied offenses of similar import. Mathews also asserted this argument at the sentencing hearing, before the trial court rendered its judgment.

{¶32} "We review a trial court's decision regarding allied offenses de novo." *State v. Savage*, 1st Dist. Hamilton No. C-190756, 2022-Ohio-3653, ¶ 24. We explained the concept of merger in *Savage*:

Allied offenses of similar import are those offenses whose elements correspond to such a degree that the commission of one offense will result in the commission of the other. *State v. Luff*, 85 Ohio App.3d 785, 621 N.E.2d 493 (6th Dist.1993); *State v. Waddy*, 63 Ohio St.3d 424, 448, 588 N.E.2d 819 (1992). If a defendant is indicted for the same conduct that can constitute two or more allied offenses of similar import, the defendant may be convicted of only one. R.C. 2941.25(A). But a defendant may be convicted of all counts where a defendant's conduct supports multiple offenses. R.C. 2941.25(B).

Courts should consider three questions to determine whether a defendant's conduct supports multiple offenses: (1) whether the offenses were dissimilar in import or significance, (2) whether the offenses were committed separately, and (3) whether the offenses were committed with separate animus and motivation. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31. An affirmative answer to any of the above will permit separate convictions. *Id*. The analysis must focus on the defendant's conduct because an offense may be committed in a variety of ways and the offenses committed may have different import. *Id*. at ¶ 30. No bright-line rule can govern every situation. *Id*.

(Internal quotation marks omitted.) *Id*. at ¶ 26-27.

{**¶33**} In *Savage*, the defendant was convicted of kidnapping and rape. *Id*. at ¶ 30. We reasoned that, "When the movement or restraint of a victim happens because of the rape, there cannot be separate convictions." *Id*. at ¶ 28. But if "the restraint is

prolonged, the confinement is secretive, or the movement is substantial to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." *Id.* Additionally, we reasoned that "a defendant may be convicted for both kidnapping and rape when the transportation or restraint of a victim subjects the victim to a substantial increase of risk of harm, separate from the harm caused by the rape itself." *Id.* at ¶ 29.

{¶34} Although the distance and time of confinement in *Savage* was not long, we noted that the defendant's act of dragging the victim by the neck subjected her to an additional risk of harm beyond the rape itself. *Id.* at ¶ 32. Further, we noted that the alley in which the incident occurred was outside of the public view and once the defendant completed the rape, he told the victim not to leave for another ten minutes. *Id.* Thus, we held that the charges of rape and kidnapping were not allied offenses. *Id.* at ¶ 33.

{¶35} Similarly, here, Mathews brutally attacked M.F. before sexually assaulting her, and she suffered multiple fractures on her face, which indicated that she would have struggled to escape on her own. Mathews also dragged M.F. to a secluded area. And he took away M.F.'s phone and told her that no one would help her. As the responding officer who testified at the sentencing hearing stated, Mathews left M.F. for dead in the woods. Given these facts, the trial court found that the kidnapping and rape were committed with a separate animus. We agree with the trial court's findings and therefore overrule Mathews's third assignment of error.

### *Reagan Tokes Law*

{¶36} Lastly, in his fourth assignment of error, Mathews argues that the trial court erred by failing to comply with the sentencing requirements of the RTL.

15

{¶37} "When sentencing an offender to a nonlife felony indefinite prison term under the Reagan Tokes Law, a trial court must advise the offender of the five notifications set forth in R.C. 2929.19(B)(2)(c)(i)-(v) at the sentencing hearing to fulfill the requirements of the statute." *Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, at ¶ 6. As the state concedes, the trial court failed to provide these notifications at the sentencing hearing. Therefore, we also remand this cause for the limited purpose of providing the sentencing notifications required under R.C. 2929.19(B)(2)(c). *See id.* at ¶ 9.

### *Conclusion*

{¶38} In conclusion, we hold that although the trial court failed to substantially comply with Crim.R. 11(C)(2) by not informing Mathews that he was subject to a mandatory prison term, the trial court's failure to do so did not prejudice Mathews. We further hold that the trial court was not required under Crim.R. 11(C)(2) to inform Mathews of RTL notifications and his eligibility for judicial release or other earned credit at his plea colloquy. Therefore, we overrule Mathews's first assignment of error. We also overrule Mathews's third assignment of error, because the offenses of kidnapping and rape were committed with a separate animus and therefore were not subject to merger.

{¶39} However, we sustain Mathews's second assignment of error because the trial court failed to make the required proportionality findings under R.C. 2929.14(C)(4) to justify consecutive sentences. We also sustain Mathews's fourth assignment of error, because the trial court failed to provide Mathews with the required notifications under the RTL.

**{¶40}** Accordingly, we affirm the judgment of the trial court in part, reverse it in part as to the trial court's imposition of consecutive sentences, and remand the cause for resentencing consistent with this opinion and the law.

Judgment affirmed in part, reversed in part, and cause remanded.

**BERGERON, P.J.**, and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.